A91A0897. RACE, INC. et al. v. WADE LEASING, INC.
(411 SE2d 56)

CARLEY, Judge.

In connection with their business relationship, appellee-plaintiff had occasion to give a "security deposit" to appellant-defendants. After the termination of their business relationship, appellee sought the return of its security deposit and, in addition, the payment of certain amounts which it had allegedly earned before their business relationship had been terminated. When appellants refused, appellee brought suit. Appellants answered and filed a counterclaim for abusive litigation. After discovery, appellee moved for summary judgment both as to its main claim against appellant and appellants' counterclaim against it. The trial court granted summary judgment in favor of appellee and appellants appeal.

1. There was no written agreement with regard to the refundability of the "security deposit" given by appellee to appellants. Appellants urge that a genuine issue of material fact remains as to that issue.

" ' "The cardinal rule in the construction of contracts is to ascertain the intention of the parties." (Cit.) "The language which the parties have used will be looked to for the purpose of finding that intention, which when it is once ascertained *will prevail over all other considerations*, in determining the nature of the agreement." (Cits.) The question remaining is whether (the language) of the contract creates an ambiguity which may be explained by parol. A word or phrase is ambiguous "when it is of uncertain meaning and may be fairly understood in more ways than one." (Cit.) *Language which is unambiguous will not be construed as ambiguous based on extrinsic circumstances*. (Cit.)' [Cit.] Where the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance. [Cits.]" (Emphasis supplied.) *MAG Mut. Ins. Co. v. Gatewood*, 186 Ga. App. 169, 172-173 (1) (367 SE2d 63) (1988). "If the terms used are clear and unambiguous they are to be taken and understood in their plain, ordinary, and popular sense. [Cits.] Dictionaries supply the plain, ordinary and popular sense. [Cit.]" *Henderson v. Henderson*, 152 Ga. App. 846, 847 (1) (264 SE2d 299) (1979). See also OCGA § 13-2-2 (2).

As the very words would indicate, a "security deposit" "is refundable unless the [depositor] has caused damage or injury to the property or has breached the terms of . . . or the laws governing the [underlying transaction]." Black's Law Dictionary (5th ed. 1979). See also OCGA § 44-7-30 (2) (defining "security deposit" in connection with a "residential rental agreement"). Thus, the refundability of a "security deposit" is implicit and the absence of any express agreement as to the refundability of the "security deposit" given by appellee to appellants is immaterial. Accordingly, the trial court correctly held that "[t]he term 'security deposit,' is clear and unambiguous as meaning a deposit for security, which would naturally be returned less any proper charges." As the undisputed evidence of record shows that there were no proper charges against the security deposit, the trial court correctly granted summary judgment in favor of appellee for the amount of the unrefunded security deposit.

2. Appellee had also alleged that it was entitled to recover from appellants payments which had been made on certain accounts receivable. As to these accounts receivable, appellants did not controvert the showing that they constituted an asset of appellee and represented amounts earned by appellee prior to termination of the business relationship. Indeed, it is undisputed that, if payments on

the accounts receivable had been made prior to termination of the business relationship, appellee would be entitled to retain them.

" ' "An action for money had and received lies in all cases where another has received money which the plaintiff, ex aequo et bono, is entitled to recover and which the defendant is not entitled in good conscience to retain." [Cits.] In such an action "the law implies a promise on the part of any person who has received the money of another to pay that person on demand. The reception of money by one and the demand by the other makes all the privity that is necessary to maintain this action." [Cits.] "It is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability, if, in equity and good conscience, he is not entitled to hold it against the true owner." [Cits.]' " *Fain v. Neal*, 97 Ga. App. 497, 498-499 (103 SE2d 437) (1958). It appears that, as a matter of law, appellee "earned and was entitled to the sum sued for and that [appellants were] in possession of this money, which [they] in good conscience [are] not entitled to retain. . . ." *Fain v. Neal*, supra at 499. It follows that the trial court correctly granted summary judgment in favor of appellee as to this issue.

3. The trial court's conclusion that appellee was entitled to pre-judgment interest pursuant to OCGA § 7-4-16 is enumerated as error.

OCGA § 7-4-16 relates to the recovery of pre-judgment interest by the owner of a "commercial account." "Commercial account" is defined, in relevant part, as "an obligation for the payment of money arising out of a transaction to sell or furnish, or the sale of, or furnishing of, goods or services. . . ." OCGA § 7-4-16. The security deposit does not represent "an obligation for the *payment* of money arising out of" the furnishing of goods or services. The security deposit represents appellants' obligation to *return* money to appellee arising out of the termination of their business relationship. Since the security deposit does not represent an obligation for the *payment* of any goods or services, appellee's right to secure a refund of its security deposit does not render it the owner of a "commercial account." Although the accounts receivable may have arisen out of the furnishing of goods by appellee to its customers, they did not arise out of the furnishing of goods by appellee to appellants. Appellants are not liable to appellee on the accounts receivable themselves, but for the failure to forward to appellee the payments which were made on the accounts receivable after the termination of their business relationship. Since appellants' liability does not arise out of the failure to pay for any goods or services that they received from appellee OCGA § 7-4-16 is inapplicable. Therefore, the trial court erred in awarding appellee pre-judgment interest pursuant to OCGA § 7-4-16.

4. The trial court did not err in granting appellee's motion for

summary judgment as to appellants' counterclaim for abusive litigation. See *Yamaha of Atlanta v. Yamaha Motor Corp. U. S. A.*, 188 Ga. App. 413, 415 (3) (373 SE2d 95) (1988).

5. Appellee's motion for the imposition of a penalty for frivolous appeal pursuant to Court of Appeals Rule 26 (b) is denied.

*Judgment affirmed in part and reversed in part. Banke, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 3, 1991 —
RECONSIDERATION DENIED SEPTEMBER 30, 1991 —

*Trauner, Cohen & Thomas, Russell S. Thomas*, for appellants.
*Land, McKnight, Newlin & Cohen, Robert H. McKnight, Jr.*, for appellee.